IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACK SILLA,            )
       Plaintiff,    )
                       )
v.                     )    2:09-cv-1481
                       )
COMMISSIONER OF        )
SOCIAL SECURITY,       )
       Defendant.    )

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (Docket No.10) be denied; that the defendant's motion for summary judgment (Docket No. 12) be granted, and that the decision of the Commissioner be affirmed.

II. Report

Presently before the Court for disposition are cross motions for summary judgment.

On November 6, 2009, Jack Silla by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), for review of the Commissioner's final determination disallowing his claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on January 7, 2004 alleging that the plaintiff had been disabled since July 30, 1995. However, the onset date was amended at the hearing to January 7, 2004 (R.109-111, 914). On June 8, 2004,

benefits were denied (R.103-107). On August 2, 2004, the plaintiff requested a hearing (R.102) and pursuant to that request a hearing was held on August 24, 2005 (R.903-918). In a decision filed on October 7, 2005, an Administrative Law Judge awarded benefits (R.60-65). On February 24, 2006, the Appeals Council reversed the prior determination and remanded the matter to the administrative law judge for a "hearing to determine if there was evidence to support a finding of mild mental retardation or cognitive impairments in Claimant's childhood and early adulthood which would support a re-opening of Claimant's 1998 Title II claim." (R.20, 73-77; 78-81). On January 31, 2007 another hearing was conducted (R.919-990) and benefits were denied on February 15, 2007 (R.25-44). On April 11, 2007, the plaintiff requested reconsideration of this determination (R.18) and upon reconsideration and in a decision dated September 2, 2009, the Appeals Council affirmed the denial of benefits (R.14-17). The instant complaint was filed on November 6, 2009.[1]

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,

---

[1] It should be noted that this is the third application for benefits filed by the plaintiff. His first application for disability benefits was filed on September 16, 1997 (R.580-582), and denied on December 9, 1997 (R.564-567). Upon reconsideration benefits were denied on May 22, 1998 (R.570-573). His second application for disability benefits was filed on December 27, 2000 (R.375-377) and denied on March 5, 2001 (R.365-368). The latest application for benefits was filed on January 7, 2004 (R.109-111).

with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition, a person will be considered disabled if he/she is

(a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and © ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

impairment [which] result[s] from anatomical, physiological, or
psychological abnormalities which [are demonstrated] by
medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearings held on August 24, 2005 and January 31, 2007 (R.903-918, 919-990), the plaintiff appeared with counsel ®. 905,921) and testified that he was born on May 10, 1955 (R.906, 926); that he completed eighth grade partially in special education (R.907, 927-929); that he is right handed (R.908,927,959) and that he is receiving Public Assistance and food stamps (R.902,976).

The plaintiff also testified that he worked as a laborer in heavy construction (R.908.933) and that he was injured at work and has settled his compensation claim (R.909,931-934-935).

The plaintiff also testified that he becomes tired and fatigued (R.910,967); that he watches television most of the day (R.910,974); that he has experienced a heart attack and several strokes (R.911); that he also suffers from diabetes (R.913), experiences constipation (R.913) and memory problems (R.936); that he is short tempered (R.937) and that he is not being treated for any mental conditions (R.937-938); that he could probably lift twenty-five pounds (R.967); that he takes medication to control his diabetes, blood pressure and cholesterol (R.969,971); that he has had stints placed in his legs to prevent clotting (R.970); that he experiences chest pains (R.972) and that he can only walk for short distances, stand for up to twenty minutes and sit for up to an hour (R.982-973).

A neuropathologist testified that he reviewed the plaintiff's medical records, heard his testimony and concluded that there was no evidence of any significant psychological problem and that the plaintiff had an average intellectual ability (R.940-965).

At the hearing a vocational expert was also called upon to testify (R.979-989). He classified the plaintiff's prior work as heavy and unskilled (R.980). When asked to assume a person of the plaintiff's age, education and work experience who is restricted to light or sedentary work with the ability to change positions, he responded that there were a large number of such positions available both nationally and regionally (R.980-981; 985). However, he testified that repeated absences would not be tolerated (R.982).

In addition, certain other evidence was considered.

A left shoulder MRI performed on July 25, 1995 revealed possible tendinitis or tendonopathy or a partial tear resulting from lifting (R.638-642).

The plaintiff was treated for pain by Dr. R.K. Wadhwa on November 21, 1995. A nerve block and medication were prescribed. The plaintiff was advised to return to work in two months (R.643-647).

The plaintiff had a shoulder manipulation performed on February 1, 1996 for adhesive capsulitis (R.648-654).

The plaintiff was treated at the Canonsburg General Hospital emergency room on February 5, 1996 for left shoulder pain. Medication was prescribed (R.658).

The plaintiff was treated at the Canonsburg General Hospital emergency room on March 25, 1996 for hyperglycemia. He was directed to continue his insulin use (R.655-657).

In a report covering the period from October 25, 1995 through July 15, 1996, Varma and Associates reported treatment for diabetes mellitus (R.682-686).

The plaintiff was treated at Tri-County Orthopaedics between August 9, 1995 and November 6, 1996 for follow-up following his left shoulder surgery (R.687-699).

The plaintiff had a left shoulder acromioplasty performed at Presbyterian University Hospital on January 6, 1997 (R.659-666).

The plaintiff received treatment at the Community Medical Center NW between June 20, 1994 and March 17, 1997 for diabetes and pain. Tobacco and alcohol abuse were noted (R.700-749).

The plaintiff attended physical therapy between August 25, 1995 and June 4, 1997 (R.750-835).

In a report of an examination conducted on November 10, 1997, Dr. Ashok Kumar noted that the plaintiff could frequently lift ten pounds and stand and walk for a block. There were no sitting limitations (R.848-855).

In a report of an orthopedic evaluation dated November 12, 1997, Dr. Jon B. Tucker diagnosed failed shoulder surgery and a history of a herniated cervical disc with radiculopathy. He noted that he believed the plaintiff had achieved maximum recovery and that no further surgeries should be performed (R.888-890).

After reviewing the medical evidence and in a residual functional capacity assessment completed on December 4, 1997, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R.856-864).

The plaintiff was treated by Dr. James D. Kang between October 9, 1996 and December 8, 1997 for a herniated disc and follow-up from shoulder and clavicular surgery. The doctor reported that the plaintiff was capable of engaging in light duty work (R.836-847).

The plaintiff was hospitalized at Presbyterian University Hospital from January 27, 1998 through January 28, 1998 for a herniated C5-C6 nucleus pulposis. A microdiskectomy was performed (R.667-681, 891-893).

In a report of a consultative examination conducted on April 7, 1998, Dr. Cynthia Dimauro diagnosed left shoulder dysfunction, residual C6 radiculopathy and insulin dependent diabetes. As much activity as tolerated was recommended. It was noted that the plaintiff could frequently lift ten pounds, stand or walk two to six hours and sit provided a sit/stand option existed (R.865-870).

After reviewing the medical evidence and in a residual functional capacity assessment completed on April 27, 1998, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R.871-878).

In a residual psychiatric assessment completed on May 11, 1998, a non-severe anxiety disorder was noted (R.879-887).

In a report of treatment rendered between February 16, 1998 and June 26, 1998, Dr. Kang reported satisfactory post-surgical healing. Return to sedentary employ was recommended (R.894-897).

The plaintiff was treated by Dr. James D. Kang between January 16, 1998 and January 14, 2000 following a cervical discectomy. It was reported that the plaintiff was healing nicely although other problems were emerging (R.415-421).

7

The plaintiff was hospitalized at Allegheny General Hospital from June 1, 2000 through June 3, 2000 for gastric paresis. He was treated with medication and his colon was reported to be normal (R.422-439).

The plaintiff was treated by Dr. Laura Kunschner between May 11, 2000 and June 20, 2000 for severe diabetic neuropathy (R.522-529).

The plaintiff was treated by Douglas Dunham, D.O. between November 26, 1999 and October 31, 2000 (R.440-457).

The plaintiff attended the Joplin Diabetes Center between September 27, 2000 and November 17, 2000 for diabetic treatment (R.458-463).

The plaintiff was treated at Allegheny General Canonsburg Hospital clinics between February 25, 2000 and November 21, 2000 for abdominal pain, constipation and diabetes (R.464-521).

The plaintiff last met the special earnings requirements of the Act for disability benefits on December 31, 2000 (R.925).

The plaintiff attended the Western Pennsylvania Hospital Pain Management Center between October 31, 2000 and January 2, 2001. His pain medication was changed (R.530-535).

After reviewing the medical evidence and in a residual functional capacity assessment completed on February 7, 2001, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand or walk for about two hours and sit for about six hours. It was noted that the plaintiff's claims of severe abdominal and back pain secondary to diabetic neuropathy were only partially credible (R.536-545).

A residual psychiatric evaluation completed on February 28, 2001 notes an affective disorder manifesting itself as pain (R.546-559).

The plaintiff was hospitalized at Allegheny General Hospital from December 14, 2002 through December 18, 2002 for a stroke. He was placed on medication and transferred to a rehabilitation facility for physical and occupational therapy (R.172-206).

The plaintiff was hospitalized at Canonsburg General Hospital from December 18, 2002 though December 24, 2002 following his stroke. Upon discharge his limitations were said to have resolved (R.161-171).

The plaintiff received physical therapy at the Canonsburg General Hospital between January 2, 2003 and February 4, 2003 (R.207-216).

The plaintiff attended therapy at the Western Pennsylvania Rehabilitation Associates between December 23, 2002 and April 22, 2003 (R.217-221).

The plaintiff was treated by D. Dunham, D.O. between January 2, 2003 and June 2003 for diabetes (R.222-227).

In a report of an examination conducted on April 13, 2004, Dr. Bruce M. Cotugno noted weakness in both hands, an instability to ambulate and diabetic neuropathy in both legs and possibly his arms with a loss of dexterity in both arms. It was noted that the plaintiff could frequently lift ten pounds, occasionally lift twenty-five pounds, stand and walk for more than two hours and sit without limitation (R.228-235).

After reviewing the medical evidence and in a residual functional capacity assessment completed on June 11, 2004, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for about two hours and sit for about six

hours. It was noted that the plaintiff's statements about his limitations were only partially credible ®. 236-246).

In a report of a psychiatric review completed on June 14, 2004 an affective mood disorder was noted and any limitations were said to be mild (R.247-259).

In a mental assessment completed on February 21, 2005 slight to moderate limitations were noted (R.260-262).

In a report of a psychological evaluation conducted on February 22, 2005, Michael Crabtree, Ph.D. diagnosed a major depressive disorder and mild mental retardation. It was noted that the plaintiff could perform the activities of daily living (R.263-269).

The plaintiff had a cardiac catheterization performed on June 20, 2005 which disclosed severe two vessel coronary artery disease and severe left ventricular systolic function. Revascularization was recommended (R.270-271).

In a report covering the period from June 20, 2004 through July 11, 2005, Dr. Sanjaya N. Saheim reported a successful deployment of three stents on July 11, 2005 (R.277-280).

The plaintiff was treated at the Washington Hospital on July 8, 2005 and August 2, 2005 where cardiac catheterizations and stenting were performed (R.272-276).

In a report dated August 15, 2005 and covering treatment since February 1999, Douglas A. Dunham, D.O. noted lessened leg strength with an ability to ambulate, insulin dependent diabetes, cervical neck injury, gastric distress and post cardiac catheterization, and concluded that the plaintiff could not be gainfully employed (R.281-282).

In an undated vocational assessment relating events which occurred in 2006, Adelmo Fini who holds a B.A. in behavioral science concluded that the plaintiff could not be gainfully employed.

The plaintiff was hospitalized at Washington Hospital between February 14, 2006 and February 17, 2006 for a cardiac catheterization (R.294-315).

In a report of a psychological evaluation conducted on July 12, 2006, Willard Reitz, Ph.D. diagnosed a major depressive disorder, alcoholism in remission and a personality disorder with obsessive-compulsive features. The prognosis was poor and the limitations were between moderate and marked (R.283-293).

The plaintiff was hospitalized at Canonsburg General Hospital from October 3, 2006 through October 5, 2006 for renal insufficiency. At that time he was diagnosed with uncontrolled Type II diabetes mellitus, atherosclerotic heart disease, peripheral vascular disease, hyperlipidemia, stage II kidney disease, and hypertension. Medication was prescribed (R.316-333).

The plaintiff was hospitalized at Canonsburg General Hospital from November 12, 2006 through November 14, 2006 for renal insufficiency, Type II diabetes mellitus, peripheral vascular disease and coronary artery disease (R.334-358).

Based on the evidence presented, the Commissioner determined:

> [E]ntitlement to any ... benefits is conditioned upon his ability to establish that he was 'disabled" on a date during the period from the July 30, 1995, date of alleged disability onset and December 31, 2000...
>
> Since July 30, 1995, the claimant has at times material to this determination evidenced the following medically determinable

impairments that, either individually or in combination, are "severe" and have significantly limited his ability to perform basic work activities for a period of at least 12 consecutive months: history of adhesive capsulitis, left shoulder, status post acromioplasty; distal claviculectomy and shoulder manipulation; and residual effects, including muscle atrophy of left shoulder rotator cuff, status post C5-6 discectomy; coronary artery disease; residual effects, status post 2002 cerebro-vascular accident; history of hypertension; insulin-dependent diabetes mellitus; questionable borderline intellectual functioning; depressive disorder; and history of substance use/abuse...

Since July 30, 1995, the claimant has at no time material to this determination had any medically determinable impairments, whether considered individually or in combination, that have presented symptoms sufficient to meet or medically equal the severity criteria for any impairment listed [in the Regulations].

* * *

The threshold language of listing 12.05 requires a claimant to have evidence "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22." Upon review of the existing record, the Administrative Law Judge finds that the claimant has not conclusively demonstrated any such functional deficits prior to age 22, such as would warrant any further evaluation...

In the opinion of the Administrative Law Judge, such IQ scores and demonstrated academic abilities within the claimant's "developmental period" clearly contraindicate such inherent cognitive dysfunction as is contemplated within the language of listing 12.05...

With regard to listing 12.02, the undersigned does not believe that the claimant has objectively evidenced any particular psychological or behavioral abnormalities that are associated with a dysfunction of the brain ... Thus, the Administrative Law Judge does not believe that the claimant has any medically determinable organic brain dysfunction such as would warrant further evaluation under the provisions of that listing ...

At all times since July 30, 1995, that are material to this determination, the claimant has had at least the residual functional capacity to perform a range of work activity that: requires no more than a "light" level of physical exertion; affords opportunity for brief, one-to two-minute changes of position at least every half-hour; requires no more than four cumulative hours of standing or walking within an eight-hour workday, all of which must be upon level surfaces; requires no climbing of ladders, ramps, ropes, scaffolds or stairs; requires no significant exposure to workplace hazzards ... affords opportunity to check blood sugars at least once per day; entails no detailed or complex instructions; requires no close concentration or attention to detail for extended periods; requires no reading ability beyond a high-school grade level, no spelling ability beyond a sixth grade school level and no mathematical ability beyond a fifth grade school level; and accommodates up to one unscheduled workday absence per month...

Having fully considered the evidence of record, the undersigned finds that the claimant has had medically determinable impairments during the period at issue that could reasonably be expected to produce some of the symptoms that he has alleged. However, the claimant's statements concerning the intensity, duration and limiting effects of his impairment-related symptoms are not entirely credible...

It is significant that the claimant has made no significant effort to return to the workforce over a period of nearly 12 years since he injured his non-dominant shoulder...

The claimant testified that he had a "stroke" in 2002. However, the claimant's disability status at that particular juncture is not materially at issue herein in that the undersigned has concluded that the claimant had at least the residual functional capacity ... as of December 31, 2000, date that he was last insured for a Period of Disability ... As of the January 2004 juncture that the claimant reapplied for Supplemental Security Income, the Administrative Law Judge believes that his condition had markedly improved overall. As indicated above, the claimant alleged no psychological impairments or learning disorders whatsoever in conjunction with the three disability filings he made ... However, his complaints have escalated both progressively and dramatically in that regard as

he has continued to pursue available impairment-related financial benefits ...

The undersigned believes that one may reasonably conclude that an individual who has demonstrated long-term reliance upon addictive medications is as a result more likely than not to report such related, ongoing symptoms of such debilitating severity as would warrant the need for such medication...

Although the claimant asserts his "total" compensable disability since July 1995 ... he was reportedly "out hunting" in December 2002 when he reportedly developed "difficulty ambulating." Related imaging and work up were all described as "normal".

* * *

Because the Administrative Law Judge does not find the claimant to be a fully credible informant, the undersigned declines to accord any controlling weight to medical opinions or diagnoses that are largely predicated upon the reliability of the claimant's subjective presentation and complaints...

The medical expert indicated his opinion at the January 2007 hearing that the available psychological evidence of record indicated that the claimant was unhappy with his situation but did not clearly establish any significantly debilitating mental illness...

The Administrative Law Judge has found no evidence that any of the claimant's coronary symptoms or procedures have since January 2004 resulted or would be likely to impose for a period of at least 12 consecutive months an inability to perform even the reduced range of light work activity that is prescribed ...

At all time since July 30, 1995 ... the claimant has lacked the ability to fully perform the requirements of his "vocationally relevant past work" as a general construction contractor/laborer...

Considering the claimant's applicable age ... limited education, unskilled work history and prescribed residual functional capacity, he has at all times since July 30, 1995 ... remained ... capable of performing jobs that exist in significant numbers within the national economy.

* * *

> The claimant has not been under a "disability" as defined in the Social Security Act, at any time since July 30, 1995 ... through December 31, 2000, period that he was last insured for a Period of Disability and Disability insurance benefits, nor at any time since January 2004, the month during which he filed his application for Supplemental Security Income ... (R.33-43).

The record reveals that at no time through December 31, 2000, the date on which he was last insured for disability purposes, did the plaintiff meet the definition of total disability. Rather he alleged a variety of complaints, which were not completely medically supported, and which the Administrative Law Judge found lacking in credibility. The latter determination rests within the providence of the Commissioner. <u>Diaz v. Commissioner</u>, 577 F.3d 500 (3d Cir.2009). As for his current application for SSI benefits, which was amended to an onset date of January 7, 2004 (R.914) there is again little in the record which would support his allegations. Rather, as the Commissioner concluded, there is a wide range of substantial gainful employ which the plaintiff is competent to perform, but rather he has devoted a significant portion of the last decade pursuing elusive benefits. Thus, we conclude there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff does not meet the disability requirements of the Social Security Act.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. <u>Azur v. Chase</u>, F.3d (3d Cir. 2010). In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, it is recommended that the

defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Within fourteen days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                     Respectfully submitted,

                                     s/ ROBERT C. MITCHELL,
                                     United States Magistrate Judge

Date: May 17, 2010.